## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## ELKINS

| | |
|---|---|
| **BRICE BRAXTON,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.): 2:20-CV-38 (JUDGE KLEEH)** |
| **CITY OF BUCKHANNON, WEST VIRGINIA; ST. JOSEPH'S HOSPITAL; DEPUTY WILLIAM CHIDESTER, UPSHUR COUNTY SHERIFF'S DEPARTMENT, in his individual and official capacity; and CORPORAL MARSHALL O'CONNOR, BUCKHANNON POLICE DEPARTMENT, in his individual and official capacity,** | |
| **Defendants**. | |

## REPORT AND RECOMMENDATION RECOMMENDING THAT DEFENDANTS CITY OF BUCKHANNON, WEST VIRGINIA AND CORPORAL MARSHALL O'CONNOR'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTNERATIVE MOTION TO DISMISS [ECF NO. 44] BE GRANTED

This matter is before the Court pursuant to a Motion for Summary Judgment or in the Alternative Motion to Dismiss filed by Defendants City of Buckhannon, West Virginia ("Buckhannon") and Corporal Marshall O'Connor ("O'Connor"), and a memorandum in support, thereof, filed on January 20, 2021. [ECF Nos. 44, 45]. The undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** these Defendants' motion for the reasons set forth below.[1]

---

[1] The undersigned submits a companion Report and Recommendation as to Defendants Deputy William Chidester and Upshur County Sheriff's Department, which in like fashion addresses the same issues and arguments raised on behalf of those Defendants.

## I. PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND

Plaintiff, proceeding *pro se*, filed a Complaint in this Court on September 14, 2020. [ECF No. 1]. Plaintiff named as Defendants those parties captioned above. While Plaintiff's claims are not straightforwardly pled, it appears that he is alleging a cause of action under 42 U.S.C. § 1983 for excessive force by law enforcement, discrimination and abuse on the basis of race, and coerced waiver of his Miranda rights. In short, Plaintiff alleges generally that law enforcement officers physically punched, kicked and slammed him to the point of unconsciousness. Plaintiff alleges that officers used racial slurs in the course of these abuses, as well as intimidated and threatened him, such that he involuntarily waived his Miranda rights. Plaintiff does not state officers' names in the narratives contained within the Complaint to specify which officers engaged in what alleged acts. Plaintiff does not specify what harm resulted from the alleged waiver of his Miranda rights. Plaintiff alleges that the harm occurred at St. Joseph's Hospital in Buckhannon, West Virginia, which is in the Northern District of West Virginia. Importantly, Plaintiff alleges that these events occurred on March 10, 2018.

Both O'Connor and Buckhannon and Defendants Upshur County Sheriff's Department (the "Sheriff's Department") and Deputy William Chidester ("Chidester") cite to a Memorandum Decision issued by the West Virginia Supreme Court of Appeals on September 4, 2020, which sets forth additional factual background in this matter. State v. Braxton, 2020 WL 5269745 (W. Va. 2020). For further context, according to that Memorandum Decision, Plaintiff was convicted in the Circuit Court of Upshur County, West Virginia for several crimes arising from what appear to the same events giving rise to the allegations in the instant case. Id. at 1.

In sum, on March 11, 2018[2], Plaintiff was involved in theft of a vehicle and flight from law enforcement. Id. Once the vehicle was reported stolen and spotted in traffic by law enforcement, O'Connor and Chidester were involved in the pursuit of Plaintiff. Id. The vehicle pursuit ended at St. Joseph's Hospital at the area of the emergency room entrance. Id. However, Plaintiff exited the stolen vehicle and ran by foot into the hospital. Id. Law enforcement officers gave chase. Id. Chidester caught up to Plaintiff in the hospital, and Plaintiff appeared to cooperate in the arrest "by going to the floor and putting his hands behind his back." Id. However, once O'Conner caught up, Plaintiff was not cooperative. Id. "[W]hen Officer O'Connor joined them and the officers tried to handcuff [Plaintiff], [he] 'rolled over on his side and started screaming, and that's when the fight ensued.'" Plaintiff was tried on the charges, and was convicted for possession of a stolen vehicle, fleeing in a vehicle, reckless driving, fleeing on foot, and obstructing a law enforcement officer. Id.

## II. PROCEDURAL HISTORY

The undersigned set a Rule 26(f) scheduling conference for March 15, 2021. During the course of this proceeding, the undersigned conducted it as a status conference. Appearing for O'Connor and Buckhannon was Duane J. Ruggier, II, their counsel. Plaintiff, *pro se*, also appeared. During this proceeding, the undersigned discussed with Plaintiff that the Court was in receipt of O'Connor's and Buckhannon's motion and memorandum in support, and inquired whether Plaintiff was in receipt of the same. Plaintiff indicated that he believed he was in receipt of the same. However, to assure that Plaintiff indeed was in receipt of the motion and memorandum, and had the full opportunity to review and respond accordingly, the undersigned ordered counsel for

---

[2] Plaintiff's Complaint alleges that these events occurred on March 10, 2018, while it is indicated in the Memorandum Decision that they occurred on March 11, 2018. The discrepancy in dates does not materially affect the undersigned's review and analysis.

O'Connor and Buckhannon to provide Plaintiff with another copy of the same. Counsel mailed the materials to Plaintiff that same day. [ECF Nos. 74, 75].

At the proceeding on March 15, 2021, the undersigned reviewed with Plaintiff the arguments which O'Connor and Buckhannon make in their pending motion. The Court emphasized to Plaintiff that absent compelling responses to these Defendants' motion, Plaintiff risks the Court granting the motion and dismissing Plaintiff's claim as to these Defendants. The undersigned ordered Plaintiff to file any such response which he may choose to submit by April 15, 2021. [ECF No. 77].

The Court previously was in receipt of Plaintiff's opposition to Defendants' motion, which was filed on January 29, 2021. [ECF No. 53]. Thereafter, on April 2, 2021, Plaintiff filed a Review of Scheduling Hearing Conference. [ECF No. 70]. The undersigned notes that this filing does not address the substantive legal arguments in the pending motion by O'Connor and Buckhannon. Then, on April 12, 2021, Plaintiff filed a Response to Defendants' Objections and Motion to Dismiss. [ECF No. 81]. Finally, on April 20, 2021, O'Connor and Buckhannon, by counsel, filed a reply in support of their motion. [ECF No. 84].

### III. LEGAL ISSUES AND ANALYSIS

Because Plaintiff is proceeding *pro se*, the Court must liberally construe the pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

4

To survive a motion to dismiss, the rules which govern civil actions require that Plaintiff here sets forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, a complaint must set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under seminal civil procedure caselaw, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reliance on Twombly, the Supreme Court has emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendants here alternatively move for summary judgment. If, on a motion made pursuant to Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d). As is well-established, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party filing a summary judgment motion must first demonstrate that here is no genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party sufficiently shows that there is no genuine factual issue such that there is only a legal issue for the Court to resolve, then the burden shifts to the non-moving party to a "make sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

### A. Statute of Limitations

Defendants here correctly argue that Plaintiff untimely filed his Complaint such that it is barred by the statute of limitations applicable to claims under 42 U.S.C. § 1983. Plaintiff alleges

wrongful acts committed on March 10, 2018, although he did not file his Complaint until September 14, 2020, after the two-year statute of limitations had run.

Defendants point out that 42 U.S.C. § 1983 does not itself specify a statute of limitations for claims brought thereunder. Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 388 (4th Cir. 2014). Rather, such claims are governed by "the most analogous state-law cause of action," which is that for a personal injury claim. Id. Because the alleged acts occurred in West Virginia, the Court must look to West Virginia law. State law provides that "[e]very personal action for which no limitation is otherwise prescribed shall be brought . . . within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" W. Va. Code § 55-2-12(b) (emphasis added). A personal injury claim is such a claim for which no statute of limitations is specifically set forth in West Virginia. Thus, it is governed by this "residual" statute of limitation – that is, the statute of limitations for causes of action for which no statute of limitations is otherwise specified. Moreover, Plaintiff cites no authority which would toll the two-year statute of limitations under these circumstances, nor is the undersigned aware of any.

Relatedly, the date of accrual of the cause of action appears to be the date of Plaintiff's encounter with Defendants here. Although state law determines the applicable statute of limitations, federal law dictates the time of accrual for civil rights causes of action. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). "[T]he time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." Id. In the instant matter, Plaintiff straightforwardly alleges that the events giving rise to his claim occurred on March 10, 2018. Nothing thereafter is alleged to have occurred which would lead to a later date of accrual.

Plaintiff insists that there is no statute of limitations for a claim under 42 U.S.C. § 1983 or for a claim made pursuant to the Fourth Amendment. [ECF No. 53 at 1, ECF No. 81 at 2]. Simply put, Plaintiff is mistaken. Although he invokes a smattering of legal authority for his arguments, the authorities upon which Plaintiff relies are, simply put, inapposite here. The undersigned declines to parse through them all, as Plaintiff's argument about the inapplicability of a statute of limitations is, on its face, incorrect as explained above.

In sum, Plaintiff's claims here are governed by a two-year statute of limitations and he would have had to comply with the same by filing his Complaint by March 10, 2020.[3] However, Plaintiff did not file his Complaint until September 14, 2020. Thus, the undersigned concludes that Plaintiff's claim is barred by the applicable two-year statute of limitations and that the Complaint should be dismissed.

### B. Adequacy of How Claims are Pled

As noted above, Rule 8(a) of the Federal Rules of Civil Procedure does not generally require that claims be pled with great detail. Nonetheless, claims must be pled with sufficient detail that a defendant has fair notice of the basis of a plaintiff's claim. Twombly, 550 U.S. at 555. More specifically:

> It is established that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. We have recognized that facial plausibility is established once . . . the complaint's factual allegations produce an inference . . . strong enough to nudge the plaintiff's claims across the line from conceivable to plausible. In assessing the sufficiency of a complaint, we assume as true all its well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. Thus, to satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged.

---

[3] It is indicated in the above-noted Memorandum Decision that these events instead occurred on March 11, 2018. This difference in dates does not affect the undersigned's analysis or recommendation here, given that Plaintiff filed his complaint approximately six months after the statute of limitations had run no matter if events occurred on March 10, 2018 or March 11, 2018.

7

<u>Nanni v. Aberdeen Marketplace, Inc.</u>, 878 F.3d 447, 452 (4th Cir. 2017) (internal citations and quotations omitted). In the context of a claim under 42 U.S.C. § 1983, such as the one here, a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 556 U.S. 676. In other words, Plaintiff's pleading of the claim here must contain enough factual allegations to be plausible enough for the Court to reasonably infer that each named Defendant bears liability. To that end, Plaintiff must state which defendant engaged in which specific act. It is not sufficient for Plaintiff to cast a wide net with broad allegations and conclusions without specifically alleging which defendants acted in which particular manner.

In this matter, other than naming individuals as parties in the caption of the matter, Plaintiff does not detail in the Complaint which officer(s) participated in the alleged "gang style beat-down" noted in the Complaint other than to state that "more than one officer participated" and that one alleged assailant outweighed him considerably. Plaintiff does identify several forms of physical harm allegedly suffered, yet does not tie specific harm to specific actor(s). Similarly, as to his allegations about forced waiver of <u>Miranda</u> rights, Plaintiff merely states that he was "threatened an intimidated" into so waiving his rights. He does not name which actor(s) were at issue or detail in any way the threat and intimidation alleged. Importantly, he does not allege that he was forced to give a false statement and he does not state whether such statement was used to his detriment at trial or otherwise. As for the racial slurs alleged, Plaintiff likewise does not further specify which individuals made such statements or recount the contents of those statements.

Thus, the undersigned concludes that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted. In the alternative, the undersigned concludes

that there is no genuine issue of material fact on the issue such that Defendants here are entitled to judgment as a matter of law.

## C. Application of <u>Heck v. Humphrey</u> to Plaintiff's Claims

As noted above, in an underlying criminal case litigated in state court, Plaintiff was convicted at trial for several offenses: possession of a stolen vehicle, fleeing in a vehicle, reckless driving, fleeing on foot, and obstructing a law enforcement officer. <u>Braxton</u>, 2020 WL 5269745 at 1. Plaintiff appealed his conviction, and the West Virginia Supreme Court of Appeals upheld the conviction. <u>Id.</u>

Defendants here invoke the application of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). In short, under this decision, a plaintiff may not recover under 42 U.S.C. § 1983 if the claim implies that the underlying criminal conviction is invalid. More specifically,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Heck v. Humphrey</u>, 512 U.S. 477, 486–87 (1994 (emphases in original). The Fourth Circuit has given further guidance as to when <u>Heck</u> bars a claim here. "First, a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence. Second, the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in

custody because the sentence has been served, but nevertheless could have practically sought habeas relief while in custody." Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015) (citations and quotations omitted).

Thus, Defendants' argument on this issue, and undersigned's analysis here, must focus on how Plaintiff's state convictions in the criminal case in state court are intertwined with his allegations in this instant matter.

The alleged use of excessive force occurred as part of the fleeing and resisting arrest giving rise to the state court convictions. If Plaintiff were to prevail in this matter, it implies that Plaintiff's conviction in state court was invalid. Thus, the excessive force portion of Plaintiff's claim does not survive the first part of the Covey test because Plaintiff cannot show that his conviction has been invalidated. And the excessive force portion of Plaintiff's claim does not survive the second part of the Covey test because, while Plaintiff no longer is in custody, he could have practically sought habeas relief while incarcerated. See Losh v. McKenzie, 277 S.E.2d 606, 611 (W. Va. 1981) (detailing the grounds on which an incarcerated person in West Virginia may base a habeas corpus petition). There is nothing in the record before this Court to demonstrate that Plaintiff availed himself of habeas corpus relief as required to survive the dismissal challenge here to his allegations of excessive force.

Likewise, the alleged portion of the claim here as to forced waiver of Miranda rights, it is unclear from the record before this Court what role, if any, such waiver played in the state prosecution. Nonetheless, it stands to reason that Plaintiff raised the issue because he perceived some detrimental effect on his underlying state case by dint of the Miranda waiver. Thus, he implies that his state court conviction is invalid. Again, Plaintiff does not survive first part of the Covey test because Plaintiff cannot show that his conviction has been invalidated. And, again,

Plaintiff could have sought habeas corpus relief while in custody, but has not demonstrated that he did. Thus, Plaintiff's claim cannot survive the dismissal challenge here to his allegations of false/coerced confession.

Accordingly, the undersigned concludes that Plaintiff's claims are barred by the <u>Heck</u> decision, such that the Complaint should be dismissed for failure to state a claim on which relief can be granted. In the alternative, the undersigned concludes that there is no genuine issue of material fact on the issue such that Defendants here are entitled to judgment as a matter of law.

### D. Qualified Immunity as to O'Connor

The doctrine of qualified immunity protects government officials against claims made for discretionary acts done in such persons' official capacity. Qualified immunity operates as a civil liability shield for "government officials . . . performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). As a practical matter, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). The qualified immunity defense is burden-shifting, in that once it is asserted, it then falls to a claimant to show that the conduct complained of (1) violated the law, and (2) the law that was violated was clearly established at the time of the alleged conduct. <u>Bryan v. Muth</u>, 994 F.2d 1082, 1086 (4th Cir. 1993).

In the context of the claim at bar, "[a] defendant sued under 42 U.S.C. § 1983 may assert a defense of qualified immunity." <u>Id</u>. Furthermore, "[t]he subjective belief or motive of a government official is irrelevant to the issue of qualified immunity. Instead, the inquiry focuses on what a reasonable official in the same position would have believed." <u>Id</u>. at 1086 (citations omitted). The qualified immunity defense is of particular note in the context of policing, especially

in the context of street-level policing where events can quickly evolve and change. <u>Rowland v. Perry</u>, 41 F.3d 167, 172 (4th Cir. 1994).

In the instant matter, the undersigned concludes that qualified immunity should operate to bar Plaintiff's claim here as to Chidester. Plaintiffs allegations, which mainly are conclusory and unsupported by properly-detailed facts, do not set forth how the acts complained of violate clearly established law. In other words, Plaintiff does not set forth in his Complaint which acts violated which laws, and how those laws were in existence at the time of the alleged acts. A well-pleaded complaint could well defeat a qualified immunity defense at this stage, but Plaintiff's Complaint, being as disjointed as it is, must fail.

As established in the Memorandum Decision by the West Virginia Supreme Court of Appeals, summarized above, Plaintiff was engaged in extensive fleeing from law enforcement, first by vehicle and later on foot. And although Plaintiff initially was cooperative with law enforcement once Chidester caught him, he became uncooperative once O'Connor joined in the arrest. In other words, Plaintiff was involved in a series of crimes which were dangerous to the public, to responding officers, and to himself.

The burden is upon Plaintiff to show that officers violated the law, and that the law so violated was clearly established at the time. Given the fast-developing and dangerous nature of events which Plaintiff caused, and given the seemingly inevitable physicality of Plaintiff's encounter with law enforcement (apparently exacerbated by Plaintiff himself), the undersigned cannot find, without a better-pled claim, that Plaintiff has defeated the qualified immunity defense here. The undersigned is not suggesting that a claimant's own law-breaking justifies the alleged responsive law-breaking by officers. It may be that Plaintiff could withstand the qualified immunity defense with a better investigation and a properly-developed complaint. But it is not the

12

Court's role to aid Plaintiff in achieving those measures, but rather to evaluate the record as developed and presented by the parties.

Accordingly, the undersigned concludes that Plaintiff's claims as to O'Connor are barred by the qualified immunity defense, such that the Complaint as to O'Connor should be dismissed for failure to state a claim on which relief can be granted. In the alternative, the undersigned concludes that there is no genuine issue of material fact on the issue such that O'Connor is entitled to judgment as a matter of law.

### E. Respondeat Superior and § 1983

It is unclear from the fragmented nature of the Complaint whether Plaintiff intended to allege that liability attaches to Buckhannon for O'Connor's alleged actions by operation of O'Connor's employment with Buckhannon. To the extent which Plaintiff posits such a theory, it must fail here as a matter of law.

"[I]it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). To this end, liability under 42 U.S.C. § 1983 cannot attach to a municipality under respondeat superior. Id. Here, Plaintiff alleges no municipal policy or custom as the source of his alleged harm. Thus, the remaining avenue for liability to attach is a respondeat superior theory. Plainly, however, that theory is unavailable to Plaintiff here.

Accordingly, the undersigned concludes that Plaintiff's claims as to Buckhannon are barred, such that the Complaint should be dismissed as to Buckhannon for failure to state a claim on which relief can be granted. In the alternative, the undersigned concludes that there is no genuine issue of material fact on the issue such that O'Connor is entitled to judgment as a matter of law.

## F. Applicability of W. Va. Code § 55-7-13d(c)

Defendants cite this portion of the West Virginia Code which bars recovery in a civil action if the alleged damages arise in the courts of the claimant's commission of felony. Defendants argue that because the events alleged here were in the course of the commission of a felony, as outlined in the Memorandum Decision noted above, then Plaintiff cannot recover.

It is unclear, without a more developed argument, how exactly Defendants posit that this state statute can defeat a claim brought under federal law in a federal court. Given the deficiencies in the Complaint and the reasons the claims should be dismissed as otherwise noted herein, the undersigned declines to address the merits of this argument.

## IV. RECOMMENDATION AND CONCLUSION

Accordingly, for the reasons herein stated, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [ECF No. 42] be **GRANTED** and Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITH PREJUDICE** and struck from this Court's docket.

Any party may within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh United States District Judge.

**Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.** 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91

(4th Cir. 1984), <u>cert.</u> <u>denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

      The Clerk of the Court is directed to provide a copy of this Order to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. <u>It is requested that mailings to Plaintiff in this matter not be by certified mail, but instead by regular first-class United States Mail, to better facilitate Plaintiff's receipt of mail.</u>[4]

      It is so **RECOMMENDED AND ORDERED.**

Respectfully submitted April 29, 2021.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court is directing that materials in this matter be sent to Plaintiff not by certified mail but instead by regular, first-class United States Mail. This is because at a hearing before the undersigned on March 15, 2021, Plaintiff stated that he his mailing address is that of a homeless shelter. As such, Plaintiff said, delivery of certified mail to a non-permanent address sometimes failed. However, according to Plaintiff, he had no such issues with regular, first-class United States Mail.